**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI SOUTHERN DIVISION**

| | | |
|---|---|---|
| TRACIE PATTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 26-03015-CV-S-BP |
| | ) | |
| O'REILLY AUTOMOTIVE, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART AND DEFERRING IN PART DEFENDANTS' MOTION TO DISMISS**

Plaintiff is a former employee of O'Reilly Automotive, Inc., (the "Company"), and while employed she participated in the O'Reilly Automotive Profit Sharing and Savings Plan (the "Plan"), which is a defined contribution plan.[1] The Plan is governed by the Employee Retirement Income Security Act, ("ERISA"), and Plaintiff (on behalf of a putative class) brings claims under ERISA against the Company, the Plan, the O'Reilly Automotive 401(k) Plan Investment Committee (the "Committee"), and 1-10 John Doe Defendants (who are described as the individual members of the Committee). Pending is Defendants' Motion to Dismiss, (Doc. 20), which is **GRANTED IN PART** and **DEFERRED IN PART**.

## I. BACKGROUND

As stated above, the Plan is a defined contribution plan, (*e.g.*, Doc. 18, ¶¶ 11, 50); it is primarily funded by the participants' contributions, and the Company matches a portion of each participant's contribution. Specifically, the Company is required to match 100% of the first 2% of each participant's contributions, and 25% of the next 4% of each participant's contributions.

[1] Most defined contribution plans are referred to as 401(k) plans; "401k" refers to the section of the Internal Revenue Code that governs such benefit plans. *See* 26 U.S.C. § 401(k).

(Doc. 18, ¶ 57.) These matching contributions must be deposited in the Plan as participants make their own contributions; that is, the Company cannot wait and deposit the matching contributions later, and once deposited the matching contributions are treated as Plan assets. (*See*, *e.g.*, Doc. 18, ¶ 59.)

Employees are automatically vested in their own contributions and the earnings thereon but are not fully vested in the Company's matching contribution (or earnings thereon) until they have worked for the Company for four years. (Doc. 18, ¶ 60.) Thus, if a participant's employment with the Company is terminated before he or she vests in the matching contribution, he or she forfeits any interest in the matching contributions paid into the Plan by the Company on the participant's behalf; these funds are sometimes referred to as "Forfeited Plan Assets."[2]

Separately, the Plan incurs expenses, which are the shared responsibility of the participants and are paid proportionally by them. (*E.g.*, Doc. 18, ¶ 53.) Consequently, at retirement a participant's benefit equals (1) the amount of the participant's voluntary contribution, *plus* (2) the amount of any Company matching contributions in which the participant is vested, *plus* (3) any earnings on those sums, *minus* (4) the participant's share of Plan expenses paid during the participant's employment with the Company. (*E.g.*, Doc. 18, ¶ 54.)

The claims in this case arise from the parties' dispute as to what happens to the Forfeited Plan Assets. In summary, Plaintiff argues that they must be used to decrease the Plan's expenses (and thereby help defray the participants' obligation to pay those expenses), while Defendants contend Forfeited Plan Assets may be used for that purpose *or* to offset the Company's obligation to match other employees' contributions (the "matching obligation").

[2] It appears that participants who remain with the company for less than four years may become partially vested, but this possibility is not relevant to the issues before the Court.

Several Plan provisions are relevant to this issue. Section 11.08 states in part that when a participant's employment ends, "the nonvested portion of his Account . . . shall be forfeited by him[.]" (Doc. 22-1, § 11.08.) The next section provides as follows:

> Any forfeitures occurring during a Plan Year shall be applied to reduce the contributions of the Employer. Notwithstanding any other provision of the Plan to the contrary, forfeitures shall first be used to pay administrative expenses under the Plan, if so directed by the Employer. To the extent that forfeitures are not used to reduce administrative expenses under the Plan, as directed by the Employer, forfeitures will be applied in accordance with this Section 11.09.

(Doc. 22-1, § 11.09.) The Forfeited Plan Assets are also referenced in § 19.05, which addresses payment of Plan expenses:

> All reasonable costs and expenses (including legal, accounting, and employee communication fees) incurred . . . in administering the Plan and Trust may be paid from the forfeitures (if any) resulting under Section 11.08, or from the remaining Trust Fund. All such costs and expenses paid from the remaining Trust Fund shall, unless allocable to the Accounts of particular Participants, be charged against the Accounts of all Participants as provided in the Service Agreement.

(Doc. 22-1, § 19.05.)

The Amended Complaint contains six counts, all of which arise under ERISA. The Court will provide details about each claim, and address the parties' arguments, below.

## II. DISCUSSION

Under Rule 12(b)(6), the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008); *see also Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it

> asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted); *see also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Horras v. American Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In conducting this inquiry, the Court is limited to a review of the Amended Complaint, as well as exhibits attached to, or materials necessarily embraced by, the Amended Complaint. *E.g.*, *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697-98 & n.4 (8th Cir. 2003). This is particularly appropriate when the suit involves a contract or other document. *E.g.*, *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010). Thus, the Court can rely on the Plan's provisions because they are described in (and hence embraced by) the Amended Complaint.

Finally, the Court offers the following observation. Defendants begin their argument by contending "courts around the country have dismissed complaints that are almost identical to Plaintiff's" and cite as an example *Hutchins v. HP, Inc.*, 737 F. Supp. 3d 851, 862 (N.D. Cal. 2024). (Doc. 21, p. 11.)[3] They quote portions of a few sentences from *Hutchins*'s 18-page opinion, none of which describe the legal analysis for any particular claim. (Doc. 21, p. 11.) They then represent that "the vast majority of courts . . . faced with allegations about the use of forfeitures to reduce employer contributions dismissed them," then list 35 cases and provide a quote from each

[3] All page numbers for documents filed with the Court are those generated by the CM/ECF system and may not correspond to the original pagination.

of them. (Doc. 21, pp. 11-15.) Of course, to say that the "majority of courts" have dismissed a certain type of claim means that some have not—but regardless, Defendants provide no legal analysis that would make these cases relevant or useful as support for their Motion. Finally, the value of Defendants' list is suspect because of obvious differences between the cases.[4] For instance, in *Matula v. Wells Fargo & Co.*, 2025 WL 1707878 (D. Minn. June 18, 2025), the plan at issue had markedly different language.[5] Moreover, the court in that case did not discuss ERISA at all; instead, the case was dismissed for lack of standing.[6] Defendants have not explained why the cases on this list support dismissal, and the Court will not independently analyze them to determine whether and to what extent they are helpful.[7]

Plaintiff has adopted a similar strategy. For instance, with respect to Count II's claim under 29 U.S.C. § 1104(a)(1)(A), she states that "many courts" have applied certain principles "to

---

[4] Plaintiff observed that Defendants' broad characterization of these cases as "almost identical" ignores differences between the Plan's provision in this case and the provisions at issue in those cases. (Doc. 23, p. 5.) Defendants then faulted Plaintiff because she "ma[de] no effort to explain those 'major differences'" and represent Plaintiff's claims are "*nearly* identical" to the claims in the 35 cases they listed. (Doc. 28, p. 6 (emphasis supplied).) But this is Defendants' Motion, and they had the initial obligation to explain why the cases they cited are relevant. Until they established their relevance, Plaintiff was not obliged to compare and contrast them. It is also not the Court's obligation to engage in that exercise when Defendants have not.

[5] The plan in that case stated that forfeitures "shall be applied . . . as a credit against the Base or Matching Contributions to be made for the current year by the Participating Employers, to pay expenses of the Plan or to make corrective adjustments to Accounts, each as determined by the Plan Administrator in its sole discretion." *Matula v. Wells Fargo & Co.*, 2025 WL 1707878, at *1 (D. Minn. June 18, 2025).

[6] After briefing on the Motion to Dismiss was completed, the Eighth Circuit affirmed the dismissal for lack of standing in *Matula* but did so for a different reason than the one expressed by the district court. The Court of Appeals held the plaintiff lacked standing because there was no allegation of "any actual injury to Matula's Plan Account stemming from Wells Fargo's use of forfeited funds." *Matula v. Wells Fargo & Co.*, 175 F.4th 958, 961 (8th Cir. 2026). Thus, the Eighth Circuit also did not address the merits of the ERISA claims. (In contrast to *Matula*, Plaintiff has alleged that her account was diminished by Defendants' actions. (*E.g.*, Doc. 18, ¶ 14).)

[7] A judge in the District of Minnesota recently ruled on a motion to dismiss in a suit asserting claims like those here and identified over 50 district court decisions addressing the topic. He observed that the outcomes depended on many factors, including the claims asserted, the theories advanced, and the relevant Plan terms, and concluded there is "no clear trend or consensus in these decisions that might justify a particular outcome" in any other case. *In re UnitedHealth ERISA 401(k) Litig.*, 2026 WL 1786167, at *9 (D. Minn. June 22, 2026). Thus, simply listing cases with favorable outcomes is insufficient.

forfeiture cases" and in a footnote lists cases but does not explain their reasoning or otherwise analyze the law. (Doc. 2, p. 11 & n.4.)

The Court cannot issue a ruling that simply tallies what other courts have done like a scorecard and then follow the side with the most victories; it must explain the legal basis for its decision. The Court will address the authorities the parties have discussed in connection with their specific arguments and ERISA's provisions.

**A. Count I—Violation of 29 U.S.C. § 1104(a)(1)(D)**

29 U.S.C. § 1104(a)(1) imposes obligations on those who have fiduciary obligations with respect to a retirement plan. Plaintiff alleges Defendants violated the obligation imposed by § 1104(a)(1)(D), which requires fiduciaries to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions" of ERISA.[8] More specifically, Plaintiff contends § 11.09 requires that Defendants use 100% of the Forfeited Plan Assets to defray Plan expenses. Alternatively, she argues § 11.09 is ambiguous, so extrinsic evidence about its meaning must be considered, and that extrinsic evidence will demonstrate Forfeited Plan Assets must be used to pay Plan expenses. And, by violating the Plan, Defendants allegedly violated § 1104(a)(1).

The Court first observes the parties do not clearly establish the appropriate standard for the Court to use when interpreting the Plan. Plaintiff argues that the Plan's provisions should be construed like a contract, but the case they cite for this proposition says this is true for "top hat plans," *Bender v. Xcel Energy, Inc.*, 507 F.3d 1161, 1167 (8th Cir. 2007), and it does not appear the Plan so qualifies. "A top hat plan is so called because it provides deferred compensation for a

[8] None of the Defendants deny they are fiduciaries under ERISA, so for the present the Court will presume that they all are.

select group of management or highly compensated employees without being subject to the Internal Revenue Code's maximum annual benefit and compensation limits." *Craig v. Pillsbury Non-Qualified Pension Plan*, 458 F.3d 748, 749 (8th Cir. 2006) (quotation omitted). The Amended Complaint's description of the Plan suggests it is not a top hat plan, so *Bender* would not apply. That being the case, it may be that the Court is required to defer to the Plan Administrator's interpretation, *see Bender*, 507 F.3d at 1167, but Defendants did not make this argument in their Suggestions in Support. They discuss the issue in their Reply Suggestions—but the Court does not ordinarily consider arguments presented for the first time in a party's Reply Suggestions.[9] Nonetheless, even if the Court applies ordinary contract principles, the Court agrees that Count I must be dismissed.

Section 11.09's first sentence states that "[a]ny forfeitures . . . shall be applied to reduce the contributions of the Employer." The next sentence provides an exception and the condition in which the exception will apply: "[n]otwithstanding any other provision of the Plan . . . forfeitures shall first be used to pay administrative expenses . . . *if so directed by the Employer*." (Emphasis supplied.) These sentences are unambiguous and are easily harmonized. The general rule is that Forfeited Plan Assets reduce the Company's matching contributions. But notwithstanding the Plan's provisions—*i.e.*, notwithstanding the first sentence's general rule—if the Company so directs Forfeited Plan Assets will be used to pay expenses instead. Thus, there is a default rule (reduce contributions) and a circumstance in which the default rule is not followed (when the Company directs that the Forfeited Plan Assets are to be used to pay expenses).

[9] It is no justification for Defendants to contend their discussion of the issue in the Reply Suggestions was proper as a response to Plaintiff's Suggestions in Opposition. Again, this is Defendants' Motion, and in their Motion they ask the Court to interpret the Plan; therefore, the standard for interpreting the Plan should have been addressed in their initial Suggestions in Support.

This understanding is confirmed by § 11.09's final sentence, which provides that if Forfeited Plan Assets "are not used to reduce administrative expenses . . . as directed by the Employer, [they] will be applied in accordance with" § 11.09. In other words, if the Company does not direct that Forfeited Plan Assets are to be used to reduce expenses, they will be used to reduce the Company's matching obligation. The final sentence also has the effect of making clear that these are the only two permissible uses for Forfeited Plan Assets.

Section 19.05 confirms this interpretation of § 11.09. It provides that administrative costs "may be paid from [Forfeited Plan Assets] or from the remaining Trust Fund." The "remaining Trust Fund" refers to the Plan assets that are not Forfeited Plan Assets; that is, from the participants' accounts.

Plaintiff does not seriously dispute this reasoning. Instead, she engages in semantic arguments to suggest that the Plan indicates a preference for using Forfeited Plan Assets to pay administrative expenses before they are applied to the Company's matching obligation. (Doc. 23, p. 10-11.) From this premise, she argues § 11.09's meaning cannot be ascertained without considering extrinsic evidence, which makes dismissal under Rule 12(b)(6) inappropriate. (Doc. 23, pp. 11-13.) But as explained above, there is no ambiguity. The Plan generally, and § 11.09 specifically, permits the use of Forfeited Plan Assets to defray the Company's obligation to match contributions. Moreover, the Plan (including § 11.09) does not indicate a preference for one course or the other; it specifically states when Forfeited Plan Assets are to be used to pay administrative expenses and when they are to be used to pay the matching obligation. Plaintiff's attempt to create an ambiguity where none exists is unpersuasive.

As a matter of law, the application of Forfeited Plan Assets to the Company's matching obligation did not violate the Plan. Therefore, Count I must be dismissed.

**B. Count II—Violation of 29 U.S.C. § 1104(a)(1)(A)**

Count II alleges Defendants breached the "duty of loyalty" imposed by 29 U.S.C. § 1104(a)(1)(A). Section 1104(a)(1) requires fiduciaries to "discharge [their] duties with respect to a plan *solely in the interest of the participants and beneficiaries*." (Emphasis supplied.) The statute adds that the fiduciaries must act "for the exclusive purposes of providing benefits to the participants [and] defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A)(i), (ii). The Amended Complaint alleges that by using the Forfeited Plan Assets to pay the Company's matching obligations, Defendants "considered the best interest of [the] Company . . . as opposed to the best interest of participants, in violation of" § 1104(a)(1)(A). (Doc. 18, ¶ 187.) And in her opposition to Defendants' Motion, Plaintiff essentially argues the duty of loyalty required Defendants to use all the Forfeited Plan Assets to pay administrative costs. Courts analyzing this issue have reached different conclusions, and the parties do not sufficiently address the issue to permit a ruling at this time.

On one hand, "the duty of loyalty requires the fiduciary to deal fairly and honestly with beneficiaries *so as to ensure that a plan receives all funds to which it is entitled*[.]" *Cunningham v. Cornell Univ.*, 604 U.S. 693, 696 (2025) (emphasis supplied; quotations omitted).[10] Thus, some courts have concluded that if the plan (as is the case here) does not require forfeited assets to be used to pay administrative costs, the duty of loyalty cannot be construed to require it. *E.g.*, *Tillery v. WakeMed Health & Hospitals*, 819 F. Supp. 3d 442, 452 (E.D.N.C. 2026); *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 863 (N.D. Cal. 2024). On the other hand, ERISA fiduciaries must act "in

[10] Another "way a fiduciary can breach the duty of loyalty is by making an affirmative and materially misleading statement." *Ruessler v. Boilermaker-Blacksmith Nat'l Pension Tr. Bd. of Trs.*, 64 F.4th 951, 961 (8th Cir. 2023). "Complying with this duty may require a fiduciary to speak up when he knows (or should know) a beneficiary is laboring under a material misunderstanding of plan benefits." *Dormani v. Target Corp.*, 970 F.3d 910, 916 (8th Cir. 2020) (quotation omitted); *see also Ruessler*, 64 F.4th at 961. Obviously, these aspects of the duty of loyalty are not implicated here.

accordance with the documents and instruments governing the plan insofar as [they] are consistent with," among other things, the duty of loyalty, 29 U.S.C. § 1104(a)(1)(D), which means following the plan is necessary, but not automatically sufficient, to satisfy the duty of loyalty. *See Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014). And because of this, some courts have held that the duty of loyalty can be violated if the fiduciaries (1) have a choice in how forfeited assets are to be used and (2) opt to pay the employer's obligations when the forfeited funds could have been used to pay administrative costs. The former choice benefits the company while the latter choice benefits the participants, and (according to these courts) the duty of loyalty is violated when the fiduciaries act in the company's interest instead of the participants'. *E.g.*, *In re UnitedHealth ERISA 401(k) Litig.*, 2026 WL 1786167, at *7 (D. Minn. June 22, 2026); *Buescher v. North Am. Lighting, Inc.*, 791 F. Supp. 3d 873, 890-91 (C.D. Ill. 2025); *McManus v. Clorox Co.*, 2025 WL 732087, at *4 (N.D. Cal. March 3, 2025); *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935, 943-44 (N.D. Cal. 2024); *Perez-Cruet v. Qualcomm Inc.*, 2024 WL 2702207, at *2 (S.D. Cal. May 24, 2024). The parties do not provide the Court with a basis for preferring one line of cases over the other.[11]

The Court discerns an additional issue that is not addressed by the parties. As explained in Part II.A above, § 11.09 of the Plan permits Forfeited Plan Assets to be used to pay administrative expenses only if the Company so directs. But, if the Company did not so direct, how could the other Defendants be liable for failing to make a choice that was not available to them? While the Company is a Defendant, there are other Defendants as well—and the Court doubts the duty of

[11] The Court acknowledges Defendants' argument that Plaintiff's theory is "contrary to the settled understanding of Congress and the Treasury Department regarding defined contribution plans," (Doc. 21, p. 17 (quotation omitted)), and that this argument has been found persuasive by some courts. *E.g.*, *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 863 (N.D. Cal. 2024). But Defendants only cited (1) a House Report from the 1986 Tax Reform Act and (2) a regulation proposed by the Department of the Treasury in 2023; they did not cite any existing regulations or statutes and the Court is not inclined to independently ascertain the basis for the "settled understanding" they describe.

loyalty required them to use the Forfeited Plan Assets in a manner that contravened the agreement. In other words, if the Company did not approve using Forfeited Plan Assets to pay administrative expenses, it is not clear how other Defendants could be liable for breaching the duty of loyalty even under the rationale employed by courts that have permitted a claim under § 1104(a)(1)(A) to proceed.

Thus, the parties must submit supplemental briefs that address the following issues (in any order they choose):

1. When a Plan provides a choice between using Forfeited Plan Assets to pay either the administrative expenses or the employer's matching obligation, does the duty of loyalty require those with fiduciary duties to use those assets to pay the administrative expenses? Why or why not?
2. If the option to use Forfeited Plan Assets to pay administrative expenses depends on the Company first permitting such use, can fiduciaries (other than the Company) violate the duty of loyalty if the Company does not permit the Forfeited Plan Assets be used in that manner? Why or why not?
3. If the option to use Forfeited Plan Assets to pay administrative expenses depends on the Company first permitting such use, can the Company violate the duty of loyalty if it does not permit the Forfeited Plan Assets be used in that manner? Why or why not?[12]

**C. Count III—Violation of 29 U.S.C. § 1104(a)(1)(B)**

Count III alleges Defendants failed to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar

[12] The Company is alleged to be the Plan's sponsor within the meaning of 29 U.S.C. § 1002(16)(B), (Doc. 18, ¶ 20), and because the Company has not argued otherwise, the Court presumes this means it (1) owes Plan participants the duties described in § 1104(a) and (2) was acting in its capacity as a fiduciary.

with such matters would use in the conduct of an enterprise of a like character and with like aims," as required by 29 U.S.C. § 1104(a)(1)(B). This requirement is often referred to as the "duty of prudence," which Defendants allegedly breached because they were required "to act solely in the interest of the Plan participants and beneficiaries and for the exclusive purpose of providing benefits to Plan participants and their beneficiaries and defraying reasonable expenses of administering the Plan, in violation of ERISA." (Doc. 18, ¶ 193.) Plaintiff further alleges Defendants allowed Forfeited Plan Assets to accumulate from year to year instead of using them annually to pay Plan expenses. (Doc. 18, ¶ 196; *see also* Doc. 18, ¶¶ 120-27.)

As with the duty of loyalty, the parties address the duty of prudence by citing cases that support their desired outcome without really analyzing them.[13] Therefore, the deficiencies the Court identified with respect to Count II are relevant to Count III. Moreover, in most (if not all) respects, Count III alleges that Defendants breached the duty of prudence by not using the Forfeited Plan Assets for the participants' benefit. In this way, Count III seems to repeat Count II. However, the duty of prudence is not breached simply because a decision disadvantages the participants. The statute's "prudent person standard is an objective standard that focuses on the fiduciary's conduct preceding the challenged decision. In evaluating whether a fiduciary has acted prudently, we therefore focus on the process by which it makes its decisions rather than the results of those decisions." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (quotations and citations omitted). Count III alleges the process Defendants employed was "imprudent," but, contrary to *Braden*'s dictates, it does so largely based on the outcome of the decision; namely, that

[13] Defendants also argue that having a year-end balance of Forfeited Plan Assets is not itself a breach of fiduciary duty, (Doc. 21, pp. 18-19), but Plaintiff does not contend otherwise, and the argument does not really address the nature of Plaintiff's claim. The Court does not interpret Count III as alleging the accumulation of Forfeited Plan Assets itself breaches the duty of prudence. Instead, Count III alleges the accumulation of Forfeited Plan Assets for the purpose of paying the Company's future years' obligations to match contributions instead of paying the current-year Plan expenses as they accrued breached Defendants' fiduciary duties.

Defendants' decisions were not as beneficial to the participants as other decisions would have been. Furthermore, to state a claim under § 1104(a)(1)(B), the Eighth Circuit has held that a plaintiff must allege some "benchmark" for a proper process. "The key to nudging an inference of imprudence from possible to plausible is providing a sound basis for comparison—a meaningful benchmark—not just alleging [for instance] that costs are too high, or returns are too low." *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 278 (8th Cir. 2022) (quotation omitted). If no benchmark is alleged, or if the benchmark is not meaningful, dismissal is appropriate. *See Barrett v. O'Reilly Auto., Inc.*, 112 F.4th 1135, 1138-39 (8th Cir. 2024). Here, Plaintiff alleges that there was no need to use Forfeited Plan Assets to pay the Company's matching obligations, and from that allegation infers Defendants violated the duty of prudence. The Court doubts this is sufficient to state a claim, but the parties do not discuss these matters.

Therefore, in addition to addressing the issues identified above with respect to Count II, the parties should address Count III by defining the duty of prudence's scope as it relates to Plaintiff's allegations. They should also address whether Count III states a claim cognizable under § 1104(a)(1)(B), or if it merely restates the claim for breach of the duty of loyalty.

## <u>**D. Counts IV and V—Violation of 29 U.S.C. § 1106**</u>

Counts IV and V allege violations of 29 U.S.C. §§ 1106(a) and 1106(b) respectively. For ease of discussion, the Court will address them together.

Section 1106 generally describes prohibited transactions. Section 1106(a)(1) states that:

> A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—
>
> > **(A)** sale or exchange, or leasing, of any property between the plan and a party in interest;
> >
> > **(B)** lending of money or other extension of credit between the plan and a party in interest;

> **(C)** furnishing of goods, services, or facilities between the plan and a party in interest;
>
> **(D)** transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or
>
> **(E)** acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

Section 1106(b) provides, *inter alia*, that a fiduciary shall not "deal with the assets of the plan in his own interest or for his own account." However, the use of Forfeited Plan Assets to pay the matching obligations owed to other plan participants is categorically not a prohibited transaction.

In *Lockheed Corp. v. Spink*, the Supreme Court held that § 1106 does not extend to "payment of benefits by a plan administrator. And the surrounding provisions suggest that the payment of benefits is in fact not a 'transaction' in the sense that Congress used that term in" § 1106. 517 U.S. 882, 892-93 (1996). This is so even if an employer or other person of interest also benefits. Moreover, *Spink* observed that the list of prohibited transactions consists of sales, exchanges, leases, lending money, and other transactions that "generally involve use of plan assets that are potentially harmful to the plan." *Id*. at 893.

In this case, Forfeited Plan Assets were used to pay the matching contributions for other employees—that is, they were used to benefit other participants. Relying on *Spink*, virtually all courts to address the issue have persuasively explained that this use of forfeited assets effectively redistributes funds from some participants to others and is thus not prohibited under § 1106. As explained by one of the first decisions to address a claim of this sort,

> Plaintiff's allegations show that forfeited amounts remain Plan assets and are merely reallocated to provide pension benefits to other employees through use as matching contributions. But this is not a prohibited transaction. . . . [T]he fact that reallocation of the forfeited amounts will reduce the amount that [the employer] contributes as matching contributions in the future does not make this a transaction for purposes of § 1106.

*Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 868 (N.D. Cal. 2024). This rationale has consistently been relied on by other courts to address the matter. *E.g.*, *In re UnitedHealth ERISA 401(k) Litig.*, 2026 WL 1786167, at *7-8 (D. Minn. June 22, 2026); *Gardner-Keegan v. W.W. Grainger, Inc.*, 2026 WL 194772, at *11 (N.D. Ill. Jan. 26, 2026); *Cano v. Home Depot, Inc.*, 2025 WL 2589567, at *7 (N.D. Ga. Aug. 26, 2025); *Middleton v. Amentum Parent Holdings, LLC*, 2025 WL 2229959, at *16 (D. Kan. Aug. 5, 2025).

The Court finds this reasoning persuasive. Forfeited Plan Assets are, as Plaintiff points out, Plan assets. Using them as matching contributions is not the same as a payment of benefits, as was the case in *Spink*—but critically, they remain Plan assets when they are transferred to the account of another Plan participant and then earmarked for use as benefits to be paid to that participant in the future. Under *Spink*'s rationale, such a transfer is, by definition, not a prohibited transaction. As a judge in the Northern District of Illinois explained:

> [T]he Complaint establishes that forfeitures remained in the Plan and were simply shifted to other employees in the form of contributions. Movement of funds within a plan does not fit neatly within the plain meaning of "transaction." Nor does movement of funds inside a plan clearly fall within the types of 'transactions' prohibited by 29 U.S.C. § 1106.

*Gardner-Keegan*, 2026 WL 194772, at *11 (quotation omitted; citing *Spink*, 517 U.S. at 892-93); *see also In re UnitedHealth ERISA 401(k) Litig.*, 2026 WL 1786167, at *8 ("It is difficult to understand how Defendants dealt with the assets of the plan in their own interest or on their own account when the assets (the forfeitures) were used to pay Plan benefits." (quotation omitted; cleaned up)).

Plaintiff relies on two district court decisions: *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935 (N.D. Cal. 2024) and *Perez-Cruet v. Qualcomm Inc.*, 2024 WL 2702207 (S.D. Cal. May 24, 2024). Both cases narrowly interpreted *Spink* as applying only to the actual payment of funds out of the

plan in the form of benefits to plan participants. *Rodriguez*, 744 F. Supp. 3d at 949; *Perez-Cruet*, 2024 WL 2702207, at *5. The Court disagrees with this narrow view of *Spink* and, like other courts that reject this interpretation, concludes that *Spink* applies when the funds in question are designated to be used to pay benefits, even if the actual payment occurs later when the plan participant retires. *See*, *e.g.*, *Garner v. Northrop Grumman Corp.*, 2025 WL 3488657, at *5-6 (E.D. Va. Dec. 4, 2025); *Brown v. Peco Foods, Inc.*, 812 F. Supp. 3d 664, 675-77 (S.D. Miss. 2025); *McWashington v. Nordstrom, Inc.*, 2025 WL 1736765, at *16 (W.D. Wash. June 23, 2025); *Steen v. Sonoco Prods. Co.*, 2025 WL 2420725, at *6-7 (D.S.C. June 4, 2025); *Dimou v. Thermo Fisher Scientific Inc.*, 2024 WL 4508450, at *11 (S.D. Cal. Sep. 19, 2024); *Hutchins*, 737 F. Supp. 3d at 868.

Because the Forfeited Plan Assets were not withdrawn from the Plan but instead were distributed to other participants' accounts, there was no transaction prohibited by § 1106. Therefore, Counts IV and V are dismissed for failure to state a claim.

**E. Count VI—Violation of 29 U.S.C. § 1103(c)(1)**

29 U.S.C. § 1103(c)(1) is referred to as ERISA's "anti-inurement" provision. It states that (with exceptions not relevant here), "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." For reasons similar to those stated with respect to Counts IV and V, Count fails to state a claim that § 1103(c)(1) has been violated; namely, the Forfeited Plan Assets remain in the Plan and will be used to pay benefits to participants.

Section 1103(c)(1) "demands only that plan assets be held for supplying benefits to plan participants," *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 22 (2004), and

> focuses exclusively on whether fund assets were used to pay pension benefits to plan participants, without distinguishing either between benefits for new and old employees under one or more benefit structures of the same plan, or between assets that make up a plan's surplus as opposed to those needed to fund the plan's benefits.

*Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 442 (1999). Accordingly, "[w]hen a plaintiff does not allege that the defendant used any of the assets for a purpose other than to pay its obligations to the Plan's beneficiaries, the defendant could not have violated the anti-inurement provision." *Tillery v. WakeMed Health & Hospitals.*, 819 F. Supp. 3d 442, 455 (E.D.N.C. 2026) (quotation omitted).

Plaintiff again relies on *Rodriguez* and *Perez-Cruet*, but the Court is not persuaded by those cases. *Rodriguez* focused solely on the fact that using Forfeited Plan Assets to pay the matching obligation benefits the employer. *Rodriguez*, 744 F. Supp. 3d at 946-47. In *Perez-Cruet*, the employer did not raise the argument discussed here and instead contended that an exception to § 1103(c)(1) (for mistaken contributions) applied. *Perez-Cruet*, 2024 WL 2702207, at *3-4. Significantly, neither *Rodriguez* nor *Perez-Cruet* addressed the fact that the forfeited assets remain in the plan as part of a participant's account, destined to be used as benefits if the participant vests—much less explain how the anti-inurement provision could be violated if the assets were used in this manner. And, as noted by numerous courts, using funds to pay benefits cannot violate the anti-inurement provision. *E.g.*, *In re UnitedHealthcare ERISA 401(k) Litig.*, 2026 WL 1786167, at *6-7 (D. Minn. June 22, 2026); *Gaetano v. MVHS, Inc.*, 2026 WL 850360, at *15-16 (N.D.N.Y. March 27, 2026); *Tillery*, 810 F. Supp. 3d at 455-56; *see also Hutchins*, 737 F. Supp. 3d at 864-67.

Because the Forfeited Plan Assets are being used to pay benefits, § 1103(c)(1) cannot be violated. Count VI fails to state a claim and will be dismissed.

## III. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss, (Doc. 20), is **GRANTED IN PART** and **DEFERRED IN PART**. Counts I, IV, V, and VI are dismissed for failure to state a claim. The Court defers ruling on the Motion with respect to Counts II and III pending receipt of the parties' supplemental briefing.

On or before September 10, 2026, Plaintiff shall file a Supplemental Brief addressing the issues outlined in Parts II.B and II.C, above. Defendants shall have 21 days thereafter to respond with their own Supplemental Brief. The Court will either rule on the remaining issues or determine how to proceed after receiving the parties' Supplemental Briefs.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT

Date: August 19, 2026